IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| MANSOUR AREKAT, Individually and in his capacity as chief operating officer and owner of Arekat Pacific Security, Inc., a Hawaii corporation dba A.P.I. Security, Inc., Plaintiff, vs. LEE D. DONOHUE, LETHA DE CAIRES, MIKE MIRANDA, RAYMOND ANCHETA, CITY AND COUNTY OF HONOLULU, and JOHN DOES 1-23, Defendants. | ) | Civil No.: CV03-00710 BMK<br><br>MEMORANDUM IN SUPPORT |

MEMORANDUM IN SUPPORT

For the reasons set forth below, Plaintiff MANSOUR AREKAT (hereinafter "Plaintiff") submits that he is entitled to judgment in his favor as to Defendants' liability under 42 U.S.C. §1983 for his arrest on December 15, 2003 because there is insufficient evidence as a matter of law to support the jury verdict that Defendants had sufficient information to establish probable cause to believe that Plaintiff was imminently dangerous to himself or others, or was gravely disabled, or was obviously ill when they arrested Plaintiff at the Aloha Surf Hotel on December 15, 2003 for an emergency mental health examination.

The Fourth Amendment's protections against unreasonable searches and seizures apply to the seizure of the mentally ill,

and must therefore be supported by probable cause. Maag v. Wessler, 960 F.2d 773, 775 (9th Cir. 1991)(citing Gooden v. Howard County, Maryland, 917 F.2d 1355, 1362 (4th Cir. 1990); McKinney v. George, 726 F.2d 1183, 1187 (7th Cir. 1984); Harris v. Pirch, 677 F.2d 681, 686 (8th Cir. 1982); In re Barnard, 455 F.2d 1370, 1373 (D.C.Cir. 1971)). Where the facts are undisputed, the issue of whether probable cause existed to arrest Plaintiff is a question of law for the court. Act Up!/Portland v. Bagley, 988 F.2d 868 (9th Cir. 1992); Brodnicki v. City of Omaha, 874 F.Supp. 1006 (D.C.NE 1995); Turner v. County of Washoe, 759 F.Supp. 630 (D.C.NV 1991); Cf., Carnell v. Grimm, 872 F.Supp. 746 (D.C.HI 1994).

A trial court may set aside a jury verdict and grant judgment as a matter of law if, under the governing law, there is no legally sufficient basis for a reasonable jury to find for that party on that issue. In ruling on such a motion the Court must disregard all evidence favorable to the moving party that the jury is not required to believe, and it may not make credibility determinations or weigh the evidence. Winarto v. Toshiba America Electronics Components, Inc. 274 F.3d 1276, 1283 (9th Cir. 2001); Settlegoode v. Portland Public Schools, 371 F.3d 503 (9th Cir. 2004), cert. denied, ___ U.S. ___, 125 S.Ct. 478, ___ L.Ed.2d ___.

I. UNDISPUTED FACTS

The undisputed evidence presented at trial shows that Defendants relied entirely on information obtained by Defendant DeCaires as the basis for Plaintiff's arrest on December 15, 2003 for an emergency mental health examination. At trial Defendant DeCaires testified that prior to Plaintiff's arrest on the evening of December 15, 2003 she had received information about Plaintiff from the FBI on or about December 4, 2003, and information reported to her by David Engle in the afternoon of December 15, 2003.

Defendant DeCaires testified that on December 4, 2003 an agent of the FBI called her requesting a background check on Plaintiff who ran API Security, a security business in Honolulu. The request was made in connection with a complaint Plaintiff had made to them about certain individuals harassing and/or threatening him. Defendant DeCaires, who had never met or heard of Plaintiff before, ran Plaintiff's name through HPD records and found that Plaintiff had no prior history of crimes other than a DUI arrest ten years earlier and that Plaintiff had a firearm registered to him.

On December 15, 2003 Defendant DeCaires was informed by Deputy Attorney General Andreas that the Department of Health had received a call on their hotline from the FBI indicating that Plaintiff may be threat to harm himself. Defendant DeCaires then contacted the FBI who informed her that their concern was based

on reports made to them by David Engle. The undisputed evidence at trial showed that on December 8, 2003 David Engle had made a written report to the FBI in which he stated the following:

> Possible Information on terrorism and also afraid for my safety & family safety. My family was visited by company assoc. without permission and I was greeted at said person's apt with a 9" MM handgun (loaded) and company possible front for Drug traffic found 2 crack pipes in said person's apt. Turned 1 pipe over to supervisor Ito.

Defendant's Joint Exhibit 1.

Defendant DeCaires did a background check on David Engle and found that Engle had a criminal history of convictions including one for terroristic threatening in 2001, one for abuse of a household member also in 2001, two for violating a protective order in 2002, one for promoting a detrimental drug in 2003, and an earlier DUI. Defendant DeCaires then contacted David Engle who agreed to come in for an interview and to make a report about what he had told the FBI. At his interview Engle identified Plaintiff from a photo line-up, claimed that (1) Plaintiff was on drugs and appeared paranoid; (2) he saw Plaintiff waving a handgun at his apartment on November 11 or 12, 2003; (3) Plaintiff had left his apartment that day with the handgun hidden in the small of his back; (4) that Plaintiff assaulted him at the office three days earlier, i.e., on December 12, 2003, and; (5) that Plaintiff was associated with terrorism. In her testimony Defendant DeCaires admitted that she never obtained any information corroborating Engle's claims from any other person.

See also, Defendant's Joint Exhibit 1, at HPD-00129-00134.

Accordingly, the Defendants' belief that Plaintiff was imminently dangerous to himself or others, or was gravely disabled, or was obviously ill was based solely on the uncorroborated claims of a person known only to the police because of his substantial prior criminal record. Additionally, the Defendants knew that Engle had a recent dispute with Plaintiff about wages allegedly owed to him and thus had his own personal motives for impugning Plaintiff. See, e.g., Sevigny v. Dicksey, 8846 F.2d 953, 957, n. 5 (9th Cir. 1988)(the reasonableness of an officer's perception of critical facts leading to an arrest includes all information reasonably discoverable by an officer acting reasonably under the circumstances and his subjective beliefs about the matter, however induced, are actually irrelevant).

It also is undisputed that Defendants never corroborated any of Engle's claims by direct observation of Plaintiff before arresting him. Compare, Maag v. Wessler, 960 F.2d 773 (9th Cir. 1991)(holding that officers had probable cause to take a person into protective custody based on the Montana statute, the information from family members and friends, **the officers' own observations**, and a physician's recommendation); Ahern v. O'Donnell, 109 F.3d 809 (9th Cir. 1997)(holding that a threat **which officers had directly confirmed was made by Ahern**, coupled

with a history of harassment, threats, and stalking, sufficed to show that a failure to hospitalize Ahern would create some danger of serious physical harm to Igoe or Cate); Gooden v. Howard County, MD., 954 F.2d 960 (4th Cir. 1992)(holding that officers reasonably believed that the plaintiff was a genuine risk of harm to herself or others when they took her into custody for an emergency examination where **after confirming complaints of screams and heavy thumping coming from her apartment no less than three times by personal observation, and observed Ms. Gooden acting strangely and giving inconsistent explanations for her demeanor and would not acknowledge that the screaming had come from her apartment**); Pino v. Higgs, 75 F.3d 1461 (10th Cir. 1996)(holding that officers had probable cause to detain and transport the plaintiff to a hospital for an emergency mental health examination **after directly confirming with Plaintiff's therapist concerns about plaintiff which had been reported to police by the plaintiff's family, going to the plaintiff's home and personally observing her locked in her bedroom refusing to come out, being informed by others living with her that she had not eaten in several days, and observing the plaintiff being dressed inappropriately and appearing disheveled when she finally did come out of her room**); Monday v. Oullette, 118 F.3d 1099 (6th Cir. 1997)(holding that officers had probable cause to take plaintiff into protective custody based upon receipt of a request

from a mental health hotline psychologist reporting that plaintiff had ingested some pills and drinking alcohol in a suicide attempt, **officers observations of the plaintiff being intoxicated, directly confirming that Plaintiff had taken an undetermined amount of pills**).

In addition, the evidence presented at trial clearly shows that Defendants never conducted a reasonable or objective investigation into any of the claims made to police by the FBI or Mr. Engle. Defendants proffered no evidence that they sought information from any source to corroborate Mr. Engle's claims and complaints about Plaintiff or that they attempted to talk to Plaintiff directly before arresting him on December 15, 2003. In fact, the undisputed testimony of Defendants at trial was that when Plaintiff was arrested he was calm and cooperative, and that no one observed any conduct on the part of Plaintiff which would warrant concerns about Plaintiff posing an imminent risk of harm to himself or others. Although Officer Troy Richards testified that while in custody immediately after his arrest Plaintiff made claims about being under surveillance by means which "sounded over the top" to him, the officer's testimony revealed nothing which would bear upon the question of whether Plaintiff was **imminently** dangerous to himself or others. In fact, Officer Richards also testified that Plaintiff was otherwise calm and cooperative throughout the time he observed Plaintiff.

In its previous order denying the Defendants' respective motions for summary judgment, the Court correctly observed that

> due process precludes the involuntary hospitalization of a person who is not both mentally ill and a danger to one's self or to others. O'Connor v. Davidson, 422 U.S. 563, 575 (1975).

The Court went on to emphasize that although Defendant DeCaires may have had a sufficient factual basis to prepare the necessary MH-1 form and thereby initiate the process for detaining Plaintiff, DeCaires did not, herself, sign the form because she was relying upon the arresting officers to make the necessary observations of Plaintiff - namely, mental illness and dangerousness - that constitute probable cause as a matter of law. But as the Court observed in its written order, and as the evidence at trial confirmed, none of the officers ever made the necessary observations of Plaintiff to constitute probable cause, and no one ever signed the MH-1 form. DeCaires failed to instruct the arresting officers as to the necessity for making a probable cause determination, and she didn't do it herself even when she met and observed Plaintiff at the offices of API.

Indeed, the MH-1 form which Defendants relied upon seems to have vanished altogether and was not utilized by the arresting officers or the doctors who later evaluated Plaintiff and determined that he was neither mentally ill nor dangerous to himself or others. The entire process is fatally flawed.

Although the Defendants have argued that the applicable

statute - i.e., H.R.S. Section 334-59(a) - does not specifically require direct observations of the person who is to be detained, if that requirement were not read into the state statute it would render the provision unconstitutional because it would enable a police officer to arrest a person without actually having probable cause. Thus - as the Defendants have contended in this case - their good faith and the reasonableness of their actions would be sufficient to enable them to avoid liability even when the arrest was without sufficient cause or legal justification. Of course the Court rejected those arguments when it concluded - as a matter of law - that these Defendants were not entitled to qualified immunity.

Unfortunately, when the Court denied Plaintiff's motion for entry of judgment as to liability as a matter of law, the jury was allowed to decide the case based solely upon their assessments of the reasonableness of the officers' actions even in the absence of any direct observations or reliable evidence constituting probable cause that Plaintiff was mentally ill and imminently dangerous. The jury apparently concluded that the Defendants reasonably believed that Plaintiff might have been ill and dangerous and that Defendants were therefore justified in taking the actions of which Plaintiff complains. That is a determination that the jury should not have been allowed to make because it is contrary to the law and directly in conflict with the rulings of the Court in its Order Denying Defendants Ancheta,

DeCaires, and Miranda's Motions for Summary Judgment filed herein on December 19, 2005.

II. CONCLUSION

For all of the reasons set forth above Plaintiff respectfully submits that the Court should rule that there is insufficient evidence as a matter of law to support the jury verdict that Defendants had sufficient information to form a reasonable belief that Plaintiff was imminently dangerous to himself or others, or was gravely disabled, or was obviously ill when they arrested Plaintiff at the Aloha Surf Hotel on December 15, 2003 for an emergency mental health examination, and order a new trial on Plaintiff's damages resulting from Defendants' unlawful conduct.

DATED: Honolulu, Hawaii, January 20, 2006.

ERIC A. SEITZ
LAWRENCE I. KAWASAKI

Attorneys for Plaintiff