CARY T. TANAKA       4858-0
Attorney at Law
Suite 510 Fort Street Tower
745 Fort Street
Honolulu, Hawaii  96813
Telephone:  536-8885
Email address:   carytanaka@aol.com

Attorney for Defendant
RAYMOND ANCHETA


              IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF HAWAII


MANSOUR AREKAT, individually  )    CIVIL NO. 03-00710 BMK
and in his capacity as chief  )
operating officer and owners  )    DEFENDANT RAYMOND ANCHETA'S
of Arekat Pacific Security,   )    MEMORANDUM IN OPPOSITION TO
Inc., a Hawaii corporation    )    PLAINTIFF'S MOTION FOR ENTRY
dba A.P.I. Security, Inc.,    )    OF JUDGMENT AS A MATTER OF LAW
                              )    FILED HEREIN ON JANUARY 20,
          Plaintiff,          )    2006; CERTIFICATE OF SERVICE
                              )
     vs.                      )
                              )    DATE:  MARCH 17, 2006
                              )
LEE D. DONAHUE, LETHA DE      )
CAIRES, MIKE MIRANDA, RAYMOND )    TIME:  2:00 P.M.
ANCHETA, CITY AND COUNTY OF   )
HONOLULU, and JOHN DOES       )    JUDGE BARRY M. KURREN
1-25,                         )
                              )
          Defendants.         )
_____)    TRIAL DATE:   JANUARY 4, 2006


          DEFENDANT RAYMOND ANCHETA'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT
     AS A MATTER OF LAW FILED HEREIN ON JANUARY 20, 2006

     Comes now Defendant RAYMOND ANCHETA("Ancheta"), by his

attorney, and hereby submits his Memorandum in Opposition to

Plaintiff's Motion for Entry of Judgment as a Matter of Law filed herein on January 20, 2006.

For the reasons discussed below, Plaintiff's Motion must be denied.

I.  <u>STATEMENT OF THE FACTS</u>:

This case arises out of an involuntary mental health evaluation of Plaintiff Mansour Arekat ("Plaintiff")and the events leading up to said evaluation.  Plaintiff was the president of API Security, Inc., a security company in the City and County of Honolulu.  The evaluation of Plaintiff's mental health condition was based on a number of reports that had been provided to Detective Letha De Caires from individuals and state and federal agencies, which included reports that Plaintiff had exhibited threatening behavior towards his employees, reports relating to suicide, reports concerning firearms, etc.  Based on the information provided, Detective De Caires contacted Sharon Black, a State of Hawaii certified psychiatric worker and eventually obtained permission to conduct an emergency mental health evaluation of Plaintiff pursuant to Section 334-59 of the Hawaii Revised Statutes, as amended.

On December 15, 2003, Detective De Caires sought the assistance from officers of the Honolulu Police Department's Specialized Services Division ("SSD") to locate and detain

Plaintiff for a mental health evaluation.  Defendant Michael
Miranda ("Sergeant Miranda") and Defendant Raymond Ancheta
("Captain Ancheta") were called upon to detain Plaintiff and have
him taken to Queen's Medical Center for a mental health
evaluation.

During the course of the search for Plaintiff, SSD officers
entered into Plaintiff's office and personal residence.
Eventually they apprehended Plaintiff and retrieved firearms from
his office.  Plaintiff was then transported to Queen's Medical
Center to be evaluated.

As a result of the detention, Plaintiff filed this lawsuit
wherein he asserted that the actions of the Defendants resulted
in a violation of his rights under the Fourth, Fifth, Eighth,
Ninth and Fourteenth Amendments of the United States Constitution
and Article I, Sections 2, 5, 7 and 12 of the Constitution of the
State of Hawaii resulting from the warrantless search of his
office and personal residence, as well as the seizure of his
firearms and the seizure, arrest, and involuntary psychiatric
examination of his person.

In addition, Plaintiff claimed that Defendants were
negligent and that their action were also intentional and
willful, and resulted in Plaintiff suffering emotional distress.

See, Third Amended Complaint for Injunction, Declaratory Judgment, and Damages filed herein on January 12, 2005.

Trial in this case commenced on January 3, 2006 and on January 11, 2006, the jury returned a verdict in favor of all of the individual Defendants.  The claims against Defendant City and County of Honolulu were dismissed in part pursuant to a motion for judgment as a matter of law.  The remaining claims against the City were then dismissed by Plaintiff before the conclusion of the trial.

Plaintiff now brings this Motion for Judgment as a Matter of Law as to the verdict reached by the jury herein.

II.  <u>JUDGMENT AS A MATTER OF LAW STANDARD</u>:

"[J]udgment as a matter of law is proper if there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmovant under controlling law." 9 Moore's Federal Practice, § 50.60 (Matthew Bender 3d. Ed.)  "Rule 50(a)(1) makes clear that courts have a duty to enforce controlling law without intruding on the jury's responsibility for fact determinations as dictated by the Seventh Amendment or by federal law."  <u>Id</u>.

In deciding whether to overturn a jury's verdict, the Court may do so "only if, under the governing law, there can be but one reasonable conclusion as to the verdict.  In other words, the motion should be granted only if 'there is no legally sufficient

basis for a reasonable jury to find for that party on that issue.'" <u>Winarto v. Toshiba America Electronics Components, Inc.</u> 274 F.3d 1276 (9th Cir. 2001).

"In ruling on a motion for JMOL, the court is not to make credibility determinations or weigh the evidence and should view <u>all inferences in the light favorable to the nonmoving party</u>." <u>Id</u>. at 1283 (citing to <u>Reeves v. Sanderson Plumbing Products, Inc.</u> 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(emphasis supplied). "[T]he court must accept the jury's credibility findings consistent with the verdict." <u>Bilbrey by Bilbrey v. Brown</u>, 738 F.2d 1462, 1468 n.8 (9th Cir. 1984). "It 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" <u>Reeves</u>, U.S. at 151, 120 S.Ct. 2097.

III.   <u>DISCUSSION</u>:

A.   <u>Search and Seizure</u>

There is no doubt that the jury was presented with conflicting testimony regarding the issue of the entry into Plaintiff's office and the entry into Plaintiff's apartment unit. The police officers testified that they were given consent to enter the premises and consent to seize Plaintiff's firearms. Plaintiff and his witnesses denied that such consent was ever given. After weighing all of the evidence, the jury determined

- 5 -

that consent was in fact obtained by the police.  Therefore, any argument regarding the search of Plaintiff's premises or the seizure of his weapons should fail.

      B.  <u>Probable Cause - MH-1</u>:

Plaintiff also argues that judgment as a matter of law is appropriate in his favor because the evidence presented at trial makes clear the fact that Defendants had no probable cause to effectuate an involuntary mental health evaluation.  Plaintiff argues that the evidence presented at trial simply does not support the jury's findings that Defendants had sufficient information to form a reasonable belief that he was imminently dangerous to himself or others, or that he was gravely disabled or was obviously ill when the police arrested him at the Aloha Surf Hotel.

In arguing his point, Plaintiff again raises the argument that the Officer's good faith belief that the MH-1 was being executed properly is simply not enough and that the only way there can be a showing of probable cause is if the officers had personally observed Plaintiff to be a danger to himself or others.  This point was raised, not once, but twice before the close of evidence.  At each juncture, this Honorable Court found that questions of fact existed as to whether the officers had properly executed the MH-1.

- 6 -

Plaintiff also attempts to refer back to this Honorable Court's prior ruling denying the respective Defendants' motions for summary judgment, by citing to the fact that the Court did not find that, for purposes of summary judgment, the preparation of the MH-1 form was properly completed, or that the officers had personally observed Plaintiff's mental state of mind. Plaintiff is correct that, for purposes of summary judgment, this Honorable Court did find that questions of fact were present with regard to the issue of the preparation of the MH-1 form, the observations of the officers, etc.

However, it must be acknowledged that, at trial, the testimony of Sharon Black provided additional information for the finder of fact regarding the preparation of the MH-1 form and evidenced the fact that it was she who made the actual determination that the issuance of the MH-1 was appropriate. At trial, Ms. Black also testified that she prepared the MH-1 form based on the information provided by David Engle and the other reports she reviewed and that she provided the form directly to Queen's Medical Center. Ms. Black also stated that she personally participated in the briefing of the SSD officers and directed that they apprehend Plaintiff and retrieve his firearms. The ultimate concern was the safety of Mr. Arekat and his employees.

- 7 -

Section 334-59 of the Hawaii Revised Statutes, as amended, states the following in pertinent part:

> (1) If a police officer has reason to believe that a person is imminently dangerous to self or others . . . the officer shall call for assistance from the mental health emergency workers designated by the director.  Upon determination by the mental health emergency workers that the person is imminently dangerous to self or others...the person shall be transported . . . to a licensed psychiatric facility for further evaluation and possible emergency hospitalization.

Haw. Rev. Stat. § 334-59(a)(1).

Although Plaintiff may not be happy with the testimony presented at trial, the fact remains that Sharon Black, the City's mental health emergency worker, did present testimony regarding the very issue that Plaintiff now raises in this motion.  The testimony was that Letha De Caires had consulted with her regarding Plaintiff and that, after conducting an independent investigation, the City's mental health emergency worker determined that there was enough information presented to warrant an examination of Mr. Arekat.  If Plaintiff believed that Ms. Black's determination was incorrect, or that she somehow violated Plaintiff's rights by not conducting an appropriate investigation, he could very well have brought a claim directly against her in her capacity as an employee of the City and County of Honolulu.  He chose not to.

- 9 -

Instead, Plaintiff points to the field officers and states that, notwithstanding the findings of the mental health emergency worker's determination, they were required to make independent observations of Plaintiff to determine whether it was appropriate to detain and arrest Plaintiff for the mental health evaluation, notwithstanding the lack of such a requirement in the statute or in the written policies of the Honolulu Police Department.

At trial, Plaintiff presented these very same arguments to the jury.  Plaintiff also submitted jury instructions which he believed supported his position with regard to the issue of probable cause and the lack thereof on the part of the police officers.  Ultimately, the jury rejected Plaintiff's arguments and found that probable cause did exist to detain and/or arrest Plaintiff based on the information obtained by Sharon Black.

C.  Qualified Immunity:

The authorities make clear the fact that "non-judicial governmental officials, when acting in the performance of their public duty, enjoy the protection of what has been termed a qualified or conditional privilege." Towse v. State, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982). "It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties-suits which would

consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration policies of government." Id. at 631, no. 8, 647 P.2d at 702 (quoting Barrv v. Matteo, 360 U.S. 564, 571, 79 S. Ct. 1335, 3339 (1959)).

Qualified immunity is a privilege enjoyed by government officials to protect them in the exercise of discretionary functions. As stated by the United States Supreme Court, the goal of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S. Ct. 2727 (1982)).  In Hunter v. Bryant, 502 U.S. 224, 112 S. Ct. 534, 116 L.Ed.2d 589 (1991), the United States Supreme Court explained the broad reach of the qualified immunity privilege:

> The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. . . . This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued.

Id. at 229, 112 S. Ct. at 537 (citations omitted) (emphasis added).

The United States Supreme Court in Saucier has provided the latest word on qualified immunity and the considerations required in a qualified immunity analysis. The qualified immunity defense must be considered in proper sequence:

> A court required to rule upon the qualified immunity issue, must consider this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.
>
> *    *    *
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

Saucier v. Katz, 533 U.S. at 201, 121 S. Ct. at 2156. Accordingly, the threshold inquiry on a qualified immunity analysis is whether the facts as alleged show a constitutional violation by the officer seeking the immunity.

In the instant case, this Honorable Court denied Defendant Raymond Ancheta's Motion for Summary Judgment based on questions

- 12 -

of fact as to supervisor liability and the fact that he had allegedly participated in the warrantless search of Plaintiff's office and the seizure of Plaintiff's weapons.  See Order Denying Defendants Ancheta, DeCaires and Miranda's Motions for Summary Judgment filed on December 19, 2005.

Given the findings of the jury in this case, it is clear that their conclusion was that the actions taken by Captain Ancheta were objectively reasonable given the facts that were available to him.  As such, no issues of material fact now exist with regard to any claim asserted against Defendant Ancheta. Along these lines, although qualified immunity normally provides pre-trial relief defendants, it should still be considered as a basis for denying Plaintiff's motion herein.

IV.  <u>CONCLUSION</u>

For the reasons discussed above, Defendant RAYMOND ANCHETA respectfully requests that Plaintiff's Motion for Entry of Judgment as a Matter of Law be DENIED.

DATED: Honolulu, Hawaii, February 24, 2006.


                              <u>/s/ Cary T. Tanaka</u>
                              CARY T. TANAKA
                              Attorney for Defendant
                              RAYMOND ANCHETA