IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MANSOUR AREKAT, individually and in his capacity as chief operating officer and owner of Arekat Pacific Security, Inc., a Hawaii corporation dba A.P.I. Security, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> LEE D. DONAHUE, LETHA DECAIRES, MIKE MIRANDA, RAYMOND ANCHETA, CITY AND COUNTY OF HONOLULU, and JOHN DOES 1-25, <br><br> Defendants. | CIVIL NO. 03-00710 BMK <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AS A MATTER OF LAW |

ORDER DENYING PLAINTIFF'S MOTION
FOR ENTRY OF JUDGMENT AS A MATTER OF LAW

This civil rights action arises from the events leading up to and culminating in the arrest of Plaintiff Mansour Arekat and the search of his home and business on December 15, 2003.  Trial commenced on January 3, 2006.  At the close of evidence, Plaintiff moved for judgment as a matter of law.  That motion was denied.  On January 11, 2006, the jury returned a verdict in favor of Defendants.

Before the Court is Plaintiff's renewed motion for judgment as a matter of law. Plaintiff argues that the evidence is insufficient to support the jury finding that Defendants had probable cause to arrest Plaintiff and subject him to an emergency mental health evaluation because the decision to arrest Plaintiff was not based on the observations of Plaintiff made by the Defendants at the time of the arrest. Plaintiff further contends that the procedure to detain him was fatally flawed because Defendants did not seek to corroborate the information obtained from Plaintiff's former employee, David Engle ("Engle") and failed to take into account Engle's bias against Plaintiff because of the prior work conflict and Engle's criminal history.

Plaintiff's renewed motion is denied. The Court finds that the information concerning Plaintiff obtained by Defendant Letha DeCaires ("DeCaires") and Honolulu Police Department ("HPD") Officer Sharon Black ("Black") prior to Plaintiff's arrest is sufficient to support the jury's finding that Defendants had reason to believe Plaintiff was imminently dangerous to himself or others at the time of Plaintiff's arrest.

## BACKGROUND

Plaintiff owns and operates a security company known as A.P.I. Security, Inc. ("API"). In early November 2003, Plaintiff hired Engle as a security

officer at API.  Within weeks, Plaintiff suspected Engle of stealing from him and resolved to fire him.  On November 12, 2003, when Plaintiff confronted Engle about the suspected theft, Engle denied the accusations and quit his employment with API.  After this incident, Engle went to the Federal Bureau of Investigation ("FBI") with allegations against Plaintiff, including his observations in November of Plaintiff's strange behavior, possession of drug paraphernalia, guns, and ammunition.  Engle also complained to the labor wage board, FBI, and HPD, that Plaintiff owed him back wages.  Engle later filed a police complaint and temporary restraining order against Plaintiff for terroristic threatening.

During this same period, Plaintiff contacted both the State Attorney General's Office and the FBI with allegations of threats he had received from his business competitors.  Due to these threats, Plaintiff moved from his apartment to the Aloha Surf Hotel.  Acting on Plaintiff's allegations and behavior, FBI Special Agent Stephen Crist ("Crist") contacted DeCaires, an HPD detective, and requested a background check of Plaintiff.  Crist told DeCaires that he was concerned about Plaintiff's potential for violence, as Plaintiff believed people were conspiring against him and had stated that he may take matters into his own hands if he didn't receive help from the FBI.  DeCaires ran a background check on Plaintiff and reported her findings to Crist.

Several weeks later, on December 15, 2003, DeCaires received information from Assistant Police Chief Kerr ("Kerr"), stating that the Attorney General's Office had requested HPD assistance, because the FBI had contacted the Department of Health's Suicide and Crisis Hotline to report their concerns about Plaintiff. Kerr directed DeCaires to handle the matter. DeCaires called Crist, who informed her of his concern over Plaintiff's mental health and possible danger to others. Crist also told DeCaires that Engle had gone to the FBI to make a "possible terrorism complaint" about Plaintiff. Crist faxed copies of the FBI's interviews with Plaintiff and Engle to DeCaires. DeCaires performed a police check on Engle, which revealed that he had a recent criminal record for drug charges and terroristic threatening. DeCaires then contacted and interviewed Engle about his allegations against Plaintiff.

DeCaires spoke with Black, HPD's mental health professional, informed her of Engle's allegations against Plaintiff, as well as the FBI's concerns, and asked whether HPD had enough information to justify detaining Plaintiff for an emergency mental health examination. After reviewing all the facts presented to her by DeCaires, Black determined that Plaintiff should undergo a psychiatric examination and filled out an unsigned MH-1 form.

DeCaires sought assistance from HPD's Specialized Services Division

("SSD") to detain Plaintiff.  Defendant Raymond Ancheta ("Ancheta"), Captain of SSD, informed DeCaires that Defendant Mike Miranda's ("Miranda") team would be handling the matter.  Pursuant to the instruction of DeCaires, Plaintiff was located at the Aloha Surf Hotel and placed under arrest.  After Plaintiff's guns were recovered from Plaintiff's business, Plaintiff was transported to the Queen's Medical Center and required to undergo an emergency mental health evaluation.

## STANDARD OF REVIEW

If, at the close of evidence at trial, a party makes a motion for judgment as a matter of law which is not granted by the Court, that party may renew its request by filing a renewed motion after entry of judgment.  See Fed. R. Civ. P. 50(b).  A renewed motion for judgment as a matter of law is governed by Rule 50(b), which provides in relevant part:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment – and may alternatively request a new trial or join a motion for a new trial under Rule 59.  In ruling on a renewed motion, the court may:
> (1) if a verdict was returned:
>     (A) allow the judgment to stand,
>     (B) order a new trial, or

      (C) direct entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

  Judgment as a matter of law is authorized "if there is no legally sufficient basis for a reasonable jury to find in favor of [Defendants]." <u>Bell v. Clackamas County</u>, 341 F.3d 858, 865 (9th Cir. 2003) (citing Fed. R. Civ. P. 50(a)). The jury verdict will be affirmed if it is supported by substantial evidence. <u>Mockler v. Multnomah County</u>, 140 F.3d 808, 815, n.8 (9th Cir. 1998). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856 (9th Cir. 1999) (internal quotations and citations omitted).

  "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51 (1986)). Thus, in deciding whether judgment as a matter of law is warranted, the Court may not assess the credibility of witnesses and must draw all reasonable inferences in the nonmovant's favor (in this case, Defendants). <u>Bell</u>, 341 F.3d at 865.

## DISCUSSION

In general, due process precludes the involuntary hospitalization of a person who is not both mentally ill and a danger to one's self or to others. O'Connor v. Donaldson, 422 U.S. 563, 575 (1975). It is also well-settled "that the Fourth Amendment's protections against unreasonable searches and seizures apply to the involuntary hospitalization of persons for psychiatric reasons." Ahern v. O'Donnell, 109 F.3d 809, 815 (1st Cir. 1996).

Hawaii Revised Statutes § 334-59(a)(1) allows a police officer with a reason to believe a person is <u>imminently</u> dangerous to himself or others to call for assistance from a state mental health emergency expert for evaluation. Haw. Rev. Stat. Ann. § 334-59(a)(1) (West, Westlaw through 2004 legislation) (emphasis added). Probable cause, therefore, in the context of an arrest for a mental health evaluation, is established when the arresting officer has reason to believe at the time of the arrest that the person to be seized has a mental health condition threatening harm to himself or others. Id.; see also, Maag v. Wessler, 960 F.2d 773, 775-76 (9th Cir. 1991).

Although probable cause must exist at the time of the arrest, the probable cause determination may be based on facts and information obtained prior to the arrest, indicating a likelihood that the person to be seized is imminently

dangerous to himself or others. In Ahern v. O'Donnell, 109 F.3d 809 (1st. Cir. 1997), a case involving an arrest pursuant to a state statute that allows for the involuntary hospitalization of a person reasonably likely to cause serious harm by reason of mental illness, plaintiff argued that the police lacked probable cause because plaintiff did not display visible signs of mental illness while in the presence of the police and did not engage in dangerous behavior between the event which caused suspicion as to his mental health and his subsequent seizure. Emphasizing that probable cause requires only a "likelihood" of dangerous activity at the time of plaintiff's seizure, the Court held that plaintiff's history of threatening behavior sufficed to establish probable cause for the arrest. Id. at 818; see also Chathas v. Smith, 884 F.2d 980, 987 (7th Cir. 1989) (holding that a police officer need not personally witness the behavior giving rise to the probable cause event).[1]

       In the present case, the information obtained by Defendants prior to Plaintiff's arrest is legally sufficient to support the jury finding of probable cause for the arrest. This evidence included DeCaires' assessment of (1) Engle's allegations made to HPD and the FBI that Plaintiff was paranoid about people watching and listening to him, carried a concealed handgun, used drugs, and

---

[1] Other courts have held that the police's observation is merely a factor in determining probable cause and not a requirement. See, e.g., Magg, 960 F.2d at 776 (finding that probable cause existed based on a Montana statute, information from family members and friends, the officers' own observations, and a doctor's recommendation).

physically and verbally threatened Engle; (2) Plaintiff's statements to HPD and the FBI that certain individuals harassed and conspired against him; and (3) HPD's mental health professional Black's recommendation supporting the mental evaluation after interviewing Engle and reviewing the record.  Although Plaintiff and other witnesses offered by Plaintiff disputed Engle's testimony, it is reasonable for the jury to have concluded that DeCaires and Black obtained sufficient credible information to support their decision that Plaintiff likely was dangerous to himself or others and therefore was required to submit to a mental health evaluation.  The fact that the arresting officers did not independently evaluate Plaintiff at the time of arrest does not render the basis for the probable cause determination legally insufficient.

    Plaintiff's argument that the procedure to detain him was fatally flawed because Defendants did not seek to corroborate Engle's testimony and failed to take into account Engle's bias against Plaintiff because of the prior work conflict and Engle's criminal history also is without merit.  The evidence reflects that DeCaires was aware of and did consider Engle's criminal record and employment dispute with Plaintiff. Moreover, the appropriateness of Defendants' assessment of the information provided by Engle and Engle's credibility were for the jury to consider. It is not for the Court to "substitute its view of the evidence for that of the jury."

Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th. Cir. 2001).

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for a Renewed Judgment as a Matter of Law.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: May 4, 2006

Arekat v. Donohue et al.; CIV NO. 03-00710 BMK; ORDER DENYING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AS A MATTER OF LAW

10